# In the United States Court of Federal Claims

|  |  |
|---|---|
| GREYSTONES CONSULTING GROUP, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant.* | No. 23-1298 <br> (Filed: December 4, 2023)[1] |

*Thomas David*, Reston Law Group, Reston, VA, for Plaintiff.

*Galina Fomenkova*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

**OPINION AND ORDER**

**LERNER**, *Judge*.

Plaintiff, Greystones Consulting Group, LLC ("Greystones"), challenges the United States Space Force's ("Space Force") evaluation of its proposal and decision to deny Greystones a contract for data management software. Compl., ECF No. 1. Greystones contends that the agency arbitrarily evaluated its proposal by applying unstated criteria and subjecting it to disparate treatment. *Id.* Plaintiff also argues that the solicitation contained latent ambiguities. *Id.*

Before this Court are the parties' cross-motions for Judgment on the Administrative Record. Pl.'s Mot. for J. on the Admin. R. ("Pl.'s Mot."), ECF No. 20; Def.'s Cross-Mot. for J. on the Admin. R. ("Def.'s Mot."), ECF No. 41. For the reasons below, Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**. Defendant's Cross-Motion for Judgment on the Administrative Record is **GRANTED**.

---

[1] This Opinion was filed on November 13, 2023, and the parties were afforded fourteen days to propose redactions. Opinion & Order, ECF No. 25. The Government requested the Court redact certain information relating to third-party offerors, which Plaintiff did not oppose. ECF No. 26. Accordingly, the Court reissues this Opinion with the proposed redactions, which are noted with bracketed asterisks.

I.        **Factual Findings**

   A.        **The Solicitation**

This protest centers on a procurement for data management software. Admin. R. ("AR") 75, 78, 15192, ECF No. 17–19. The Space Force intends to aggregate large amounts of data from disparate sources and systems. AR 106. The data is expected to have varied classification and security requirements. AR 76. Thus, the software must be able to operate in secure environments and provide advanced analytics to the broader space community. AR 106.

The Space Force conducted a full and open competition for indefinite delivery indefinite quantity ("IDIQ") contracts. AR 84–86, 106. The agency planned to award around twenty contracts to each qualifying offeror but reserved the right to increase the quantity of contracts. AR 1040. To qualify for award, offerors needed to receive an "acceptable" rating on two factors outlined in the solicitation. AR 1039–40. For Factor 1, offerors completed Commercial Questionnaires indicating if the offeror had "a commercially available solution that satisfie[d] data needs as defined in the SOW [Statement of Work]." AR 1039. Only proposals rated "acceptable" at Factor 1 moved on for consideration to Factor 2. AR 1036. For Factor 2, the agency evaluated the proposals' technical approaches. AR 1040.

The solicitation required offerors to "document Data Connection and Ingestion capabilities of the proposed commercial software solution with respect to requirements stated in SOW Paragraph 3.1.1." AR 1033. It also instructed offerors to "provide a detailed technical explanation of how the solution will ensure these three capabilities are satisfied: ingest, store, and share." *Id.* The technical evaluation also included an accreditation requirement. *Id.* Specifically, SOW Paragraph 3.1.1 stated that offerors must:

> Provide a single, integrated platform that is able to ingest, store, synchronize, search, share, transfer, analyze, and visualize large datasets from a variety of internal and external sources, including structured, unstructured, and semi-structured datasets from a variety of network-based, file-based, and message-based interfaces.

AR 1015.

The instructions cautioned offerors not to "simply rephrase or restate the Government's requirements, but rather . . . provide convincing rationale to address how the offeror intends to meet these requirements." AR 1032. The Space Force also weighed all factors equally, and offerors needed to satisfy each factor to be eligible for award. AR 1040. The agency did not consider past performance or price at this stage of the procurement. AR 57, 62–63.

On January 17, 2023, the Space Force issued a Request for Proposals ("RFP") for the data management software. AR 75, 78, 15192. It subsequently awarded eighteen contracts to offerors whose proposals were rated "acceptable" under both factors. AR 8668, 8671–75. Greystones' proposal was rejected as it received a "unacceptable" rating under Factor 2. AR 8578, 8668.

### B.     Greystones' Proposal Evaluation

The Space Force released the Source Selection Decision Document ("SSDD") outlining its evaluation process on March 13, 2023.  AR 8669.  Under Factor 2, the agency identified "Single Integrated Platform Solution" as a factor and defined the term as "a set of tools that are connected via custom software developed by the Offeror which provides value added capabilities and a single user experience."  AR 8579.  The SSDD also stated that the evaluators "sought evidence for the three elements contained in the platform characteristics (i.e., custom software, value added capabilities, single user experience)."  *Id.*

Also on March 13, 2023, the Space Force released Greystones' final technical evaluation report.  AR 8578.  The agency rated Greystones "unacceptable" for three requirements: single integrated platform solution, store, and share.  AR 8580–81.  According to the evaluation, Greystones "failed to demonstrate how the proposed solution is a single integrated platform that meets the industry understood characteristics."  AR 8580.  The proposal instead named a "a suite of tools that are used to meet some of the capabilities individually" without showing how the solution could use "custom software" to "integrate the listed suite of tools into a single user experience."  *Id.*

For the store requirement, the Space Force rated Greystones' proposal as unacceptable because it inadequately explained "how it would store data inside of a single integrated platform solution."  AR 8581.  The agency found that Greystones failed the share requirement because it omitted "the methods, tools and capabilities for sharing native to the proposed single integrated solution."  *Id.*

After receiving the SSDD, Greystones requested a debriefing for further explanation.  AR 13874.  On April 6, 2023, the agency provided Plaintiff with an enhanced post-award debriefing, reiterating the SSDD's conclusions.  AR 14003–07.  Greystones then filed a protest with the Government Accountability Office ("GAO").  AR 15122.  Substantively, Plaintiff argued that the Space Force acted arbitrarily because it applied unstated evaluation criteria and subjected Greystones to disparate treatment.  *Id.*  Greystones also contended that the solicitation contained latent ambiguities.  *Id.*  The GAO denied the protest on July 18, 2023.  *Id.*  It found that the Space Force reasonably evaluated Greystones' proposal according to the solicitation's terms and dismissed the latent ambiguity and disparate treatment claims as time barred.  AR 15128.

## II.   Procedural History

On August 11, 2023, Greystones filed a Complaint in this court.  Compl.  The Government subsequently submitted the Administrative Record, and Greystones moved for judgment on the Administrative Record.  AR; Pl.'s Mot.  The Government then responded to Greystones' Motion and cross-moved for judgment on the Administrative Record.  Def.'s Mot.  Plaintiff submitted its Reply on October 13, 2023, to which the Government responded on October 26, 2023.

### III.      Standard of Review and Jurisdiction

The Court of Federal Claims has jurisdiction over protests by "an interested party objecting to a solicitation by a federal agency for bids or proposals for a proposed contract . . . or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). The Court may set aside an agency action, such as a proposal evaluation, "if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (citations omitted).

A procurement decision is rational if "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001) (citations omitted). That said, "an offeror's mere disagreement with the agency's judgment concerning the adequacy of the proposal is not sufficient to establish that the agency acted unreasonably." *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377, 384 (2003), *aff'd*, 365 F.3d 1345 (citations omitted).

When deciding cross-motions for judgment on the administrative record, the Court must "make factual findings from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005). "Unlike a motion for summary judgment, a genuine dispute of material fact does not preclude a judgment on the administrative record." *Sierra Nevada Corp. v. United States*, 107 Fed. Cl. 735, 751 (2012).

### IV.      Discussion

#### A.      The Space Force Reasonably Evaluated Greystones' Proposal.

Greystones claims that the Space Force erred by 1) applying unstated evaluation criteria; 2) including latent ambiguities in the solicitation; and 3) subjecting Greystones to disparate treatment. For the reasons below, all three arguments fail.

##### 1.      The Space Force Did Not Apply Unstated Evaluation Criteria.

To succeed on a claim for unstated criteria, Greystones must show that "(i) the procuring agency used a significantly different basis in evaluating the proposals than was disclosed; and (ii) the protester was prejudiced as a result—that it had a substantial chance to receive the contract award but for that error." *Banknote Corp.*, 56 Fed. Cl. at 387. Greystones fails on both counts.

The Space Force may not rely on unstated evaluation criteria in considering proposals and, where appropriate, must disclose each factor's relative importance. *Banknote Corp.*, 56 Fed. Cl. at 386 ("It is hornbook law that agencies must evaluate proposals and make awards based on the criteria stated in the solicitation."). Even so, the agency need not identify evaluation elements "intrinsic to the stated evaluation factors." *Id.* at 387. The agency retains "great discretion in determining the scope of an evaluation factor." *Forestry Survs. & Data v. United States*, 44 Fed. Cl. 493, 499 (1999).

Greystones does not dispute that the Space Force expressly required a "single integrated platform." Pl.'s Mot. at 10. Instead, it contends that the Space Force applied a definition of this

4

term as a criterion without divulging this information to offerors. *Id.* The agency specified three "industry standard characteristics" of single integrated platforms: connection of tools with custom software, value added capabilities, and single user experience. AR 8579. Greystones seems to suggest that there is no industry standard definition of "single integrated platform." *See* Pl.'s Mot. at 7. Additionally, Plaintiff argues that the term does not "imply" a requirement for a user interface, let alone a single user experience. *Id.* at 11.

Despite Plaintiff's assertions, the Space Force acted rationally when it applied a definition of "single integrated platform" that called for a single user experience.[2] The record shows that the Government applied an "industry standard" definition of "single integrated platform." Indeed, other offerors understood "single integrated platform" to call for a "single user experience" and tailored their proposals to meet this requirement. *See, e.g.*, AR 8515 (Agility Consulting, Inc.), 8527 (Avantus Federal, LLC), 8537 (Bluestaq, LLC), 8542 (C3 AI, Inc.), 8570 (Enlighten IT Consulting, LLC), 8575 (Ernst & Young, LLP), 8593 [***], 8605 (MAGS DS), 8642 (Palantir), 8647 [***], 8652 (Raft, LLC).

In particular, [***]' proposal—which was rated "acceptable" under the single integrated platform requirement—stated that their solution "provides a single integrated platform for enterprises to build, maintain, and secure solutions in a *single user experience*." AR 8593 (emphasis added). Likewise, Avantus Federal's accepted proposal specified that it "provides a user-friendly interface that allows non-technical users to . . . participate in the data analysis process[.]" AR 8527. And Agility's proposal received an acceptable rating under this factor by explaining that its solution "employ[s] custom software . . . [which provides] a single user experience." AR 8515.

The Space Force relied on an industry understanding of "single integrated platform" in evaluating the proposals. *See ARxIUM, Inc. v. United States*, 136 Fed. Cl. 188, 206 (2018) (finding that the government's claim that "nesting station" is an "industry standard term" was unsupported by the record). Further, even if the Space Force's applied definition was not an industry standard meaning, "an agency may consider all matters that offerors would have reasonably have believed to be within the scope of the factor." *Forestry Survs.*, 44 Fed. Cl. at 497 (citation omitted). That several offerors crafted their proposals with the understanding that a "single integrated platform" called for a "single user experience" reinforces that the Space Force reasonably applied this criterion.

---

[2] Greystones also fails to show that the "custom software" and "value added capabilities" factors constitute unstated evaluation criteria. In fact, Plaintiff appears to concede that the solicitation calls for "custom software" and "value added capabilities," and does not assert that these parts of the agency's definition are extrinsic to the "single integrated platform" term. Pl.'s Mot. at 11 ("While there is an argument that a value-added, custom software is what the Solicitation is seeking, the application of 'single user experience' has no support anywhere in the Solicitation."). Greystones only later contends in its Reply that "the manner in which the Space Force applied these components in the evaluation shows that they should have been defined in the Solicitation." Pl.'s Reply at 4. Plaintiff argues too little too late and does not prove that the Space Force acted arbitrarily.

5

In addition, the Space Force did not err because its definition was an intrinsic element of the term "single integrated platform." Plaintiff argues that the term "single integrated platform" and SOW 3.1.1 "do not even imply a requirement for a User Interface" let alone a "single user experience." Pl.'s Mot. at 11. However, when read as a whole, a "single user experience" is a subfactor in the evaluation. For instance, the agency provided specific requirements aimed at the user experience, such as requiring the proposed solution to "[a]llow users to create objects and add attributes through an intuitive graphical user interface" and "[p]rovide users with interactive network diagrams." AR 1016, 1018; *see also* AR 1015 ("[i]nclude graphical interfaces . . . through the front-end user interface"), 1016 ("[e]nable users, both technical and non-technical, to clean and prepare massive scale datasets"), 1018 ("[a]llow users to create objects and add attributes through an intuitive graphical user interface"). These instructions, coupled with SOW 3.1.1's direction to supply a "single integrated platform," demonstrate that "single user experience" is an intrinsic element that the Space Force was not required to explicitly describe in the solicitation. *See Banknote Corp.*, 56 Fed. Cl. at 387; *Bean Stuyvesant, L.L.C. v. United States*, 48 Fed. Cl. 303, 321–22 (2000).

### 2. The Solicitation Did Not Contain Latent Ambiguities.

A contract provision is ambiguous if "more than one meaning is reasonably consistent with the contract language." *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997 (Fed. Cir. 1996) (citation omitted); *Metric Constr., Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 751 (Fed. Cir. 1999) (finding that differing interpretations must fall within a "zone of reasonableness"). A reasonable interpretation "gives meaning to all parts of the contract" rather than "leav[ing] a portion of the contract useless, inexplicable, void or superfluous." *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004). If a court detects an ambiguity, it next determines whether the defect is patent or latent. A patent ambiguity exists when the solicitation has "an obvious omission, inconsistency or discrepancy of significance." *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1312 (Fed. Cir. 2016) (quoting *E.L. Hamm & Assocs., Inc. v. England*, 379 F.3d 1334, 1339 (Fed. Cir. 2004)). In contrast, a latent ambiguity is a "hidden or concealed defect which is not apparent on the face of the document." *Id.*

Here, the solicitation was not ambiguous. Plaintiff interprets a "single integrated platform" as one that allows "all of the tools and aspects of the software . . . to integrate."[3] Pl.'s Mot. at 11. To Greystones, the repetition of the "ingest, store, and share" functional requirements and mention of "single integrated platform" highlighted the importance of the former and the insignificance of the latter. *Id.* Thus, Greystones argues that its interpretation of "single integrated platform" was reasonable and that the solicitation included a latent ambiguity.

---

[3] Greystones later contends in its Reply that it reasonably interpreted "single integrated platform" to mean "the need for the software to have integrated security and policies." Pl.'s Reply at 5. Plaintiff does not explain how this alternative interpretation falls within a "zone of reasonableness." This new definition could render other parts of the solicitation redundant—the SOW addressed security policy requirements in a different section than the one at issue. Greystones' conclusory statements do not show that its interpretations were reasonable or that the Government acted arbitrarily.

The Court disagrees. Greystones' interpretation conflates the type of software (i.e., single integrated platform) the Space Force needs with the required functions (i.e., ingest, store, and share). As the Government noted, the solicitation did not instruct offerors to provide "any solution that is able to ingest, store, [and] share," but a "single integrated platform." Def.'s Mot. at 17 (emphasis omitted). Plaintiff's circular definition renders "single integrated platform" superfluous.

Additionally, "courts should use evidence of trade practice and custom not only to determine the meaning of an ambiguous provision, but to determine whether a contract provision is ambiguous in the first instance." *Metric Constr.*, 169 F.3d at 753. Yet Greystones offers no evidence of trade practice or custom that supports its interpretation of SOW 3.1.1. And, as previously noted, the Space Force applied an industry standard meaning of "single integrated platform." *Supra* Section IV(A) at 5. Plaintiff cannot now inject ambiguity into a contract that was not reasonably susceptible to competing interpretations at the time of bidding, especially when it provides such minimal support for its claim.

Even if the Court finds ambiguity, Greystones waived this argument as it did not object to the requirement before bidding closed. If the Space Force required a type of platform with no existing industry understood meaning—as Plaintiff suggests—and failed to expressly provide one, this is an "obvious omission . . . of significance." *E.L. Hamm & Assocs., Inc.*, 379 F.3d 1334, 1339 (Fed. Cir. 2004). Such ambiguity rises to the level of a patent defect, and Plaintiff should have raised it earlier. Having failed to do so, Greystones' current argument is time barred. *See Blue & Gold, Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) ("[A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.").

### 3. The Space Force Did Not Subject Greystones to Disparate Treatment.

To prove disparate treatment, a protestor must show that an agency "unreasonably downgraded its proposal for deficiencies that were 'substantively indistinguishable' or nearly identical from those contained in other proposals" or "inconsistently applied objective solicitation requirements between it and other offerors." *Off. Design Grp. v. United States*, 951 F.3d 1366, 1372 (Fed. Cir. 2020) (citations omitted). Greystones theorizes that the Space Force improperly preferred other offerors who bid with the name brand Databricks software. Pl.'s Mot. at 20. Greystones compares its proposal to three others' (Agility Consulting, August Schell Enterprises, and Avantus Federal), arguing that it made nearly identical statements as these competitors, all of whom bid with Databricks software. *Id.* Still, Greystones' proposal is not "substantively indistinguishable" from the acceptable proposals.

To begin, the record does not show that the Space Force preferred offerors bidding with the Databricks software. For example, [***]'s proposal included the Databricks software. Yet it was still rejected with an unacceptable rating under the single integrated platform criterion. AR 8551, 8553. The Space Force concluded that [***] "failed to demonstrate how it would provide a single user experience or how it was a single integrated platform" because it offered "a set of standalone commercial tools without demonstrating how any custom software integration would

be accomplished." AR 8553. The single user experience and custom software subfactors were also applied in Greystones' evaluation. AR 8580.

The Space Force also rejected three other offerors who proposed using Databricks as part of their solution. It excluded [***] and [***] at Factor 1. AR 15207, AR 15228. The agency rated [***] unacceptable under the accreditation requirement. AR 15214. These offerors did not receive awards. AR 15240.

Greystones counters that these other rejected proposals are falsely equivalent. It points to the fact that [***]. AR 2900; Pl.'s Reply at 6. This is a distinction without a difference. It also ignores that Greystones and [***] were rejected for the same reason: both offerors proposed disparate tools without adequately explaining how they would be unified to provide a single user experience. And, ultimately, Greystones' failure to give specific details about how its proposal would meet requirements and its emphasis on the "modularity" of its solution highlighted its inadequacies.

Greystones insists that it made "virtually . . . identical statement[s]" as the awardees. Pl.'s Mot. at 20. It presents a few quotes from three awardees' proposals to support this point. *Id.* According to Plaintiff, this demonstrates that the Space Force cherry-picked disadvantageous statements from Greystones' proposal and ignored other proof that it offered a single integrated platform. *See id.* at 14 ("This evaluation document cites a couple sentences in Greystones' proposal, however, these sentences are chosen out of full context."), 15 ("The Space Force points to the 'suite of tooling' language while completely ignoring the fact that this same sentence state [sic] 'with unified policies and security.'"). But while the agency provided "proposal references" to explain why Greystones failed technically, this cannot be extrapolated to mean that the agency *only* relied on those excerpts in its evaluation. A handful of similar statements does not make Greystones' proposal "substantively indistinguishable."

At any rate, the Space Force did not act arbitrarily by weighing this key difference between Greystones and the accepted proposals: Plaintiff repeatedly described its solution as "modular" and a "suite of tools," which casted doubt on whether it could provide a single integrated platform. AR 8580. The three awardees identified by Plaintiff did not make such statements. AR 1137–1283, 1284–1415, 1416–1576. And other offerors who used similar descriptions alluding to disconnected systems or tools were also rated unacceptable under this criterion. *See, e.g.*, AR 8585 (rejecting [***], which stated that [***]), 8563 (rating [***]'s proposal unacceptable because it referenced [***]), 8632 (rejecting [***]'s solution that [***] because it was not a single integrated platform).

The agency could have reasonably concluded that Greystones' descriptions significantly undermined its promise to supply "a unified platform that supports the ingest, store, and sharing of data." AR 3710. This Court declines to substitute its judgment for that of the agency regarding whether Greystones adequately demonstrated technical proficiency. *See Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989); *Hydraulics Int'l, Inc. v. United States*, 161 Fed. Cl. 167, 182 (2022). It is enough that Greystones' proposal was substantively different from the other proposals. Its disparate treatment claim fails.

### 4. The Agency Did Not Erroneously Evaluate Greystones' Ability to Meet the "Share" and "Store" Requirements.

Lastly, Greystones argues that the Space Force arbitrarily evaluated its ability to meet the "share" and "store" requirements. Pl.'s Mot. at 18–19. According to Plaintiff, the agency did not identify parts of the proposal that it found unacceptable under the "share" requirement. *Id.* at 18. Greystones also claims the agency "defaulted to its 'single integrated platform' factor to find the proposal unacceptable" for the "store" requirement. *Id.* at 18–19. As support, Plaintiff quotes parts of its proposal that the agency allegedly ignored.

Greystones' arguments remain unpersuasive. The agency was not required to cite every instance in which Greystones' proposal failed to meet the "share" requirement. Nor must this Court determine whether Plaintiff's software "[p]rovide[s] a single, integrated platform that is able to ingest, store . . . [and] share." AR 1015. The inquiry is limited to whether the Space Force had a rational basis for its decision to rate Greystones' proposal as unacceptable. If the agency's decisional path "may reasonably be discerned," this Court will not disturb the Space Force's evaluation. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).

Greystones' argument is essentially a quibble with the Space Force's technical judgment—an area in which the Court holds a narrow scope of review. *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996) ("[T]he minutiae of the procurement process in such matters as technical ratings . . . involve discretionary determinations of procurement officials that a court will not second guess."); *Banknote Corp.*, 56 Fed. Cl. at 384 (stating that "naked claims [of disagreements with evaluations], no matter how vigorous, fall far short of meeting the heavy burden of demonstrating" arbitrariness). The agency rationally determined that Plaintiff failed to meet the "single integrated solution" requirement. It is then unsurprising that Greystones' offer of a "modular approach to data storage" likewise led to a negative rating under the "store" requirement. AR 8581. Thus, the Space Force reasonably evaluated Greystones' proposal.

### B. Greystones Is Not Entitled to Injunctive Relief.

In deciding whether to grant permanent injunctive relief, the Court considers whether: "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). "Proving success on the merits is a necessary element for a permanent injunction." *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 999 (Fed. Cir. 2018). Greystones fails to do so here. Accordingly, the Court denies Greystones' request for injunctive relief. *Mitchco Int'l, Inc. v. United States*, 26 F.4th 1373, 1384 n.7 (Fed. Cir. 2022) ("Because we conclude that [plaintiff] has not shown success on the merits, we need not address its claim of irreparable injury.")

## V. Conclusion

For these reasons, Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**. Defendant's Cross-Motion for Judgment on the Administrative Record is **GRANTED**. The Court directs the Clerk of the Court to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Carolyn N. Lerner<br>
CAROLYN N. LERNER<br>
Judge